1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 10CR2444-LAB |
| Plaintiff, | **ORDER FOLLOWING REMAND RE: ASSESSMENT OF PREJUDICE AND CONFIRMING DENIAL OF PREVIOUS ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| ANTONIO MELENDEZ-CASTRO, | |
| Defendant. | |

**I**

**STATEMENT OF THE CASE**

The Ninth Circuit remanded this case with instructions to consider whether Antonio Melendez-Castro was prejudiced by the faulty advice he received from an Immigration Judge (IJ) about the possibility of seeking voluntary departure during his November 25, 1997 deportation hearing. *United States v. Melendez-Castro*, 671 F.3d 950, 955 (9th Cir. 2012). The parties submitted briefing on the prejudice issue, and this court heard oral argument on the issue on April 16, 2012. After considering the pleadings and the arguments of counsel, and reviewing circuit precedent on the issue of prejudice, this court concludes that the defendant was not prejudiced by the IJ's advice, and that the defendant's 1997 deportation

10cr2444

1   order should not be set aside. The court therefore confirms its previous order denying the

2   defendant's motion to dismiss the indictment.

3        The Court of Appeals further directed this court to set forth on the record the reasons

4   for its conclusion, one way or another. *Id.* Accordingly, a full explanation and rationale for the

5   court's conclusion follows.

6                                              **II**

7                                         **PREJUDICE**

8        **A. Standard for Assessing Prejudice**

9        As a preliminary matter, the parties disagree on how to apply the standard for

10   assessing whether the defendant was prejudiced by the IJ's failure to meaningfully advise

11   him of the right to seek voluntary departure.  Both parties recognize that *United States v.*

12   *Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004) identifies the correct legal standard,

13   but they disagree on whether the standard should be applied subjectively or objectively.

14        *Ubaldo-Figueroa* holds that to succeed in collateral attacking a deportation order, a

15   defendant must show he was prejudiced by a flaw in the deportation process. The standard

16   isn't particularly stringent.  The defendant doesn't have to prove, for example, that he had

17   a winning argument against being deported (rather than being voluntarily returned) to his

18   country.   Instead, he only has to show that he had *plausible grounds* for relief from

19   deportation, *Ubaldo-Figueroa*, 364 F.3d 1050, which means that the facts presented would

20   cause the the decision maker to exercise discretion in his favor. *United States v. Arce-*

21   *Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998).  In determining whether an alien is eligible for

22   voluntary return, immigration judges should consider both favorable and unfavorable factors

23   and balance them. *Campos-Granillo v. INS*, 12 F.3d 849, 852 (9th Cir. 1993).  Factors such

24   as family ties, length of residence in the U.S., hardship on the alien's family, and evidence

25   of service to the community are considered favorable. Unfavorable factors include the

26   existence, seriousness and recency of any criminal record, possibly the grounds for

27   deportation, and other information indicating the alien's bad character.  *Id*.

28   //

1    The government takes the position that this standard should be applied subjectively
2    and peculiarly, with a focus exclusively on the defendant's actual immigration hearing. Here,
3    for example, the government maintains the prejudice issue must be resolved by ascertaining
4    whether the particular IJ who presided at Melendez-Castro's deportation hearing would have
5    granted him voluntary departure had the defendant been given a meaningful opportunity to
6    explain his equities.  The defendant disagrees with the government's slant on how prejudice
7    should be assessed.   According to the defendant, the prejudice assessment — more
8    specifically, whether plausible grounds for relief should have been recognized — must be
9    determined objectively and without regard to the proclivities of the particular IJ who presided
10   at the deportation hearing.

11   The court embraces the defendant's position. Because a defendant does not have
12   to show that "he actually would have been granted relief," *Ubaldo-Figueroa*, 364 F.3d 1050,
13   it only makes sense to evaluate whether there are plausible grounds for relief from
14   deportation from an objective standpoint.  In other words, the question to be asked is: What
15   conclusion would a reasonable Immigration Judge reach after evaluating the favorable and
16   unfavorable circumstances?  Requiring the defendant to demonstrate that the result of his
17   own deportation hearing before *a particular IJ* would have been different would often be
18   tantamount to proving that he *actually* would have been granted relief, a requirement
19   rejected by *Ubaldo-Figueroa*.  Moreover, applying the subjective standard the government
20   advocates would have the effect of insulating erroneous IJ decisions from review, whether
21   the error stemmed from faulty advice given by the IJ or from a refusal to exercise discretion,
22   or some other reason.

23   Melendez-Castro's 1997 deportation hearing is a case in point. The record establishes
24   that the particular IJ who presided at the hearing was dead set against granting voluntary
25   departure to anyone who had been convicted of a crime in the United States ("I don't grant
26   voluntary departure to anyone convicted of a crime in the United States . . . .").  Had
27   Melendez-Castro not been discouraged from presenting an argument against being
28   deported, there is no doubt that the IJ would have ordered him deported anyway because

1    of his criminal record. The Court of Appeals was aware of the IJ's scorched earth policy

2    because it quoted his statements in its opinion. *Melendez-Castro*, 671 F.3d at 953.

3    Nonetheless, the panel remanded the case for this court to make an independent

4    assessment of prejudice. Obviously, remand wouldn't have been necessary if the issue was

5    as simple as determining what this particular IJ would have done because that determination

6    was already evident from his statements. The remand presupposes that this court should

7    objectively assess what a reasonable IJ would have done under the same circumstances.

8        **B. Discussion**

9        Melendez-Castro's first argument is that prejudice should be presumed because the

10   IJ refused to exercise discretion. It's debatable whether that's what happened here. The IJ

11   expressly acknowledged that he had discretion to grant or deny voluntary return to illegal

12   aliens who were convicted of unaggravated crimes while they were in the U.S. *Melendez-*

13   *Castro*, 671 F.3d at 950 ("Voluntary departure is available to anyone who has not been

14   convicted of an aggravated felony. I can deny this in my discretion . . . ."). Taking the IJ at

15   his word, although he knew he had discretion to grant voluntary departure, he had apparently

16   decided he would *always* exercise his discretion in a manner that denied relief to criminals.

17   The Court of Appeals did not hold that the IJ refused to exercise his discretion. Rather, it

18   held that by *announcing* that he would invariably deny relief, the IJ discouraged Melendez-

19   Castro and other aliens from *applying for voluntary return*. *Id.* at 954. So the contention that

20   the IJ refused to exercise discretion is not supported by the record.

21       Even if the IJ had refused to exercise discretion, the law is clear that prejudice is not

22   to be presumed merely because of a deprivation of some right during a deportation hearing.

23   *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992) (en banc) (a deprivation of the

24   right to judicial review of a deportation order is of no consequence without a showing of

25   prejudice); *United States v. Cerda-Pena*, 799 F.2d 1374, 1379 (9th Cir. 1986) (prejudice from

26   a constitutional failure is required before a deportation will be deemed unlawful). Contrary

27   to Melendez-Castro's first argument, then, the IJ's premature announcement that he would

28   deny voluntary removal to all criminal aliens was not inherently prejudicial.

10cr2444

1    Melendez-Castro's backup argument is that he was prejudiced by the IJ's inclination

2    to rely too heavily on his criminal record in denying voluntary departure, without considering

3    positive factors or his personal equities.[1]   In his original pretrial motion to dismiss the

4    indictment, Melendez-Castro outlined four positive factors that he contends should have

5    tilted the balance in favor of granting voluntary departure: (1) he had been living in the U.S.

6    for *nine* years at the time of his deportation; (2) he had been in a committed relationship with

7    a U.S. citizen for *twenty-five* years and had fathered a daughter who was a U.S. citizen; (3)

8    he had only *two* criminal convictions at the time of his deportation hearing; and (4) he had

9    not been previously removed or deported. *Defense Motion to Dismiss Indictment* at 14 (filed

10   August 25, 2010). He identifies no additional factors.

11    The court has detected some discrepancies in Melendez-Castro's identification of

12   positive factors. First, the defendant's declaration (as distinct from his motion papers)

13   establishes that he had been living continuously in the United States for approximately *seven*

14   years, not nine years as represented in the defense motion. *See Supplement to Motion to*

15   *Dismiss*, Exhibit G — Declaration of Antonio Melendez-Castro, at 3 ("At the time of my

16   deportation hearing, I had been a continuous resident of the United States for more than

17   seven years."). Second, also in his declaration, Melendez-Castro avers that he had been in

18   a "committed relationship" for *fifteen* years, not twenty-five years as the defense motion

19   represented. *Id.* ("At the time of the immigration hearing, I had a family in the United States,

20   which included . . . my United States citizen common law wife of 15 years . . . ."). Third, and

21   of much greater significance to the assessment of prejudice than the other discrepancies,

22   the defendant had suffered *five* criminal convictions in the United States at the time of his

23   deportation hearing, not two as represented in the defense motion  and mentioned by the

24

25

26

27   _____

28        [1]  The argument is hypothetical because Melendez-Castro didn't mention any positive factors to the IJ or try to raise any equities at his deportation hearing, perhaps because the IJ made it clear they wouldn't matter if the person had a criminal record.

10cr2444

Court of Appeals.[2]  The Presentence Report (PSR) in this case, which was filed November 8, 2010, lists and describes the five separate theft convictions at pages 3-4.

Melendez-Castro's first theft offense — involving boxer shorts — occurred March 12, 1990. After initially failing to appear in court, he was convicted of the offense on April 12, 1990. In the meantime, it appears from the notations corresponding to the offense in the PSR that a bench warrant was issued for the defendant's arrest, and that he remained a fugitive for nine months. He was arrested on the warrant in December 1990, and eventually sentenced on April 12, 1991 to 30 days in jail.

Melendez-Castro committed a second theft offense on September 23, 1990, for which he was convicted on September 25, 1990. He was on summary probation for the boxer shorts theft conviction at the time. This time he received a 1 day sentence and 12 months probation.

On January 13, 1997, the defendant committed a third petty theft offense by stuffing a pair of jeans into a bag he brought with him into a department store and walking out without paying for them. PSR at 3. He was charged with a petty theft with a prior. Under California law, petty theft with a prior is a felony, *see* California Penal Code § 666, although it can also be charged or adjudicated as a misdemeanor. When not charged as a felony, petty theft with a prior is a high-grade misdemeanor punishable by imprisonment of up to one year in jail. *Id*.

Before the January 1997 pants theft was adjudicated, the defendant committed a fourth petty theft on April 11, 1997. He was charged in a second, separate complaint with

_____

[2]  The panel opinion states that Melendez-Castro suffered *two* criminal convictions, noting that both convictions were alleged in the Notice to Appear. *Melendez-Castro*, 971 F.3d at 952. Though the opinion doesn't mention Melendez-Castro's three additional theft convictions before his deportation hearing, the panel must have been aware of them. The court deduces this because in footnote 1 of the opinion, the panel points out that one of the defendant's thefts involved "stealing three pairs of boxer shorts valued at six dollars." *Id*. at 952-53, n.1. This detail concerning the defendant's theft activity is not contained in the Notice to Appear, but it is mentioned in the PSR.  Additionally, because both parties' appellate briefs referenced the PSR, they were required by Ninth Circuit Rule 30-1.10 to forward copies of the report to the panel. The PSR documents ten criminal convictions suffered by the defendant, five of which preceded his 1997 deportation hearing. PSR at 3-6.

petty theft with a prior. Though the two petty theft with a prior offenses were committed on different days and denominated by separate case numbers, PSR at 3-4, the defendant was sentenced concurrently to 60 days in jail for both thefts on April 15, 1997.  He was also placed on three years probation on both cases.

Less than six months into his probation for the two petty theft with a prior offenses, Melendez-Castro committed a fifth petty theft. Once again, he was caught leaving a department store with a pair of jeans he had secreted in a bag he had brought into the store. He pled guilty to petty theft with a prior for the third time within a year, and he was sentenced to 120 days in custody on November 3, 1997. He began serving his 120 day sentence two days before the Notice to Appear was served on him by the Immigration Service and three weeks before his deportation hearing.

The three additional theft convictions not noted in the defendant's motion or mentioned in the panel opinion quantitatively and qualitatively affect the balancing of equities. Quantitatively, it can hardly be considered an equity that the defendant suffered "only two convictions" (as the defense maintained in the Motion to Dismiss) because, in fact, he had suffered *five* convictions. While committing the same crime twice doesn't necessarily establish a pattern of criminality, committing  the same form of theft on five separate occasions does tend to mark an offender an inveterate thief.[3]

Additionally, from a qualitative perspective, the offenses in combination are serious. Because Melendez-Castro was a repeat offender, three of his five convictions were treated as high grade misdemeanors — punishable by up to twice as long as garden variety petty theft. Also, all five convictions were for acts involving dishonesty and moral turpitude. In the two cases where he stole pants from department stores, his conduct appears to have been premeditated as he apparently brought bags into the stores with him to conceal the items he

---

[3]  The defendant later confirmed this impression by committing subsequent additional theft convictions after illegally reentering the United States subsequent to his 1997 deportation. *See* PSR at 4-6 (5/23/200 felony conviction for petty theft with a prior; 9/29/2004 felony conviction for petty theft with a prior; April 8, 2009 felony conviction for petty theft with a prior). Because the defendant suffered these additional felony theft convictions after he was deported, the court has not factored them into its consideration of whether the defendant has shown prejudice in connection with his 1997 deportation hearing.

10cr2444

intended to steal. Further aggravating Melendez-Castro's situation is that he committed three of the offenses while he was on probation for other earlier offenses. Moreover, two of the thefts (9/23/1990 and 4/11/1997) were committed within a relatively brief time after he had completed serving jail sentences for earlier theft convictions. In combination, the increasing seriousness and recency of these crimes would have lead any reasonable immigration judge to strongly doubt whether Melendez-Castro deserved any form of discretionary relief as of the date of his deportation hearing.

The additional convictions also influence the balancing of other ostensibly favorable factors in a qualitative way. For example, the defendant cites his 15-year common law relationship and his fathering of a United States citizen child as favorable factors. As a matter of generality, both factors *are* favorable. However, it is not at all clear that either the defendant's common law wife or his daughter could or did count on him for support, financial or otherwise, at the time of his deportation hearing. After all, Melendez-Castro had been in and out of jail during 1997, and he was serving a 120 day jail sentence even as he awaited his deportation hearing on November 25, 1997.  It's hard to conceive how denying him voluntary return to Mexico posed any greater hardship on his common law wife and his daughter than they were already experiencing from his continuing criminality and repeated stints in jail.

That the defendant had been in the United States continuously for approximately seven years prior to his deportation hearing can also be considered a favorable factor, as can the fact that his father was a lawful permanent resident. Once again, however, the defendant has presented no evidence that he was regularly employed or that he supported his father during that time. Thirteen years after he was deported, he told the probation officer who interviewed him for the PSR that "he had spent most of life working various temporary jobs and noted he never had a permanent job." PSR at 9. And, on the advice of counsel, he refused to discuss whether he had used or been addicted to drugs. PSR at 8. Unlike *United States v. Arrieta*, 224 F.3d 1076, 1082 (9th Cir. 2000), where the defendant produced strong corroborating evidence of the support he provided to his family, including declarations and

expert testimony, Melendez-Castro has produced no evidence beyond the somewhat contradictory accounts of his life circumstances. His declaration (which the court primarily relies on) essentially establishes only that he was in the United States for about seven years, that he was involved in some form of a relationship that apparently began either 15 or 25 years earlier, that his father resided in the U.S., and that while here he fathered a child who was a U.S. citizen. The nature and extent of his relationships, his common law wife, his daughter, and his father, all of which could conceivably heighten their importance as factors in the prejudice assessment, are not explained. Nor has the defendant supplied any supporting documentation or corroboration from three individuals he identifies as family members, making it difficult for the court to assess whether or how much weight should be given to his asserted family circumstances.

When an applicant for voluntary departure has a history that includes "a succession of criminal acts," *Matter of Bucemi*, 19 I. & N. Dec. 628, 633-34 (1988), or a pattern of serious criminal misconduct, he may be required to demonstrate heightened equities to gain relief. *Ayala-Chavez v. INS*, 944 F.2d 638, 641 (9th Cir. 1991). Melendez-Castro committed five theft convictions in seven years. During nine months of that same seven year period, he was a fugitive with an outstanding warrant for his arrest. He also repeatedly violated grants of probation by committing new offenses. His latest offense occurred less than a month before his deportation hearing, and he was serving his sentence for that offense while his deportation hearing was underway. Viewed in its fullness, Melendez-Castro's criminal history leading up to his deportation was not trifling, but instead reflected a pattern of serious criminal misconduct. The court finds that Melendez-Castro's serial theft convictions, his fugitive status for nine months, and his probation violations, all occurring during the relatively short period of time he had lived in the United States prior to his deportation, together justify applying the heightened equities standard here. *Compare United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1056-57 (9th Cir. 2001) ("an applicant for § 212(c) relief who has a serious criminal history must demonstrate unusual or outstanding equities in order to receive relief"). //

1    Balancing the favorable factors the defendant has identified against his unfavorable

2  criminal record, his lack of real accomplishment or service to the community, and evidence

3  suggesting his dishonesty and bad character, the court finds that he has not shown unusual

4  or outstanding equities necessary to justify relief from deportation. In fact, taking into account

5  the inconsistent and contradictory history claimed by the defendant and the lack of

6  supporting or corroborative evidence to substantiate his claims, the court finds *even without*

7  *resort to the heightened equities standard* that he has not demonstrated he had plausible

8  grounds for relief from deportation. He was therefore not prejudiced by the IJ's flawed

9  discussion of the right to seek voluntary departure.

10                                                                 III

11                                         **FINDING AND CONCLUSION**

12    Because the court finds that the defendant suffered no prejudice from the erroneous

13  advisal at his deportation hearing, the court's order of September 21, 2010 denying the

14  defendant's motion to invalidate the deportation and dismiss the indictment is confirmed. The

15  sentence imposed by the court on December 13, 2010 is likewise confirmed. Any notice of

16  appeal of this order must be filed no later than fourteen (14) days from the date this order

17  is entered in the docket.

18    **IT IS SO ORDERED**.

19

20  DATED:  May 18, 2012

21

22                                         **HONORABLE LARRY ALAN Burns**
                                             United States District Judge

23

24

25

26

27

28

10cr2444